We're going to move now to Appeal 24-1018 United States v. Daniel Xie. And Mr. Tunick, we'll begin with you. You may please the court. Good morning. Good morning, counsel. Your Honors, we are seeking a reversal and remand for resentencing of Daniel Xie based on a fundamental misunderstanding of the nature and characteristics of the offense and an adoption of incorrect facts or false facts. We start by saying that it is extraordinarily rare that the United States Attorney's Office commits to a recommendation of probation where the agreed sentencing range is 24 to 30 months where there is alleged substantial loss to the victim. However, in this particular case, the government recognized the unique nature and characteristics of the offense, of this offense, pursuant to 18 U.S.C. 3553A1 and recommended probation as part of the plea agreement. The United States Probation Office followed the government's recommendation. The unique circumstances were that Dan Xie did not set out to scheme, defraud, or steal from any person or entity. He was requested by a friend in China to set up seven corporations, they were set up in the state of Colorado, and bank accounts in his name and register these corporations with the Walmart marketplace. No one owned these corporations and he was given exclusive and complete control over the corporate bank accounts. After the money lay dormant in these accounts for over a year, he began trading the funds in these accounts and lost a significant amount of these funds. Hold on, I want to make sure I know what you're arguing. I don't, I didn't think we're here to talk about sufficiency of evidence. No, that's correct, Judge. Right, I thought, I thought your appeal was that there was an error made by the district court. So why are we talking about the U.S. Attorney's Office and the plea agreement? I thought the error was made by the district court in your view. Correct. I just wanted to give your honors a backdrop of the nature and characteristics of the offense that was agreed to. No, I totally, look, I understand that he is not happy with his sentence, I get that. But for us to reverse, don't you have to identify a legal error that was committed by the district court? Well, that's where I'm headed, your honor. Well, the time is short though, you might want to get there. Okay. What this indicates is that he never stole these funds. They were in his name. He was the exclusive and sole signatory on the bank account. Why did he plead guilty? He plead guilty because the statute also talks about conversion and the money, it's almost akin to an unjust enrichment. It was clear that he didn't earn those funds. So in light of that, that's why there was a plea of guilty. There was a recommendation of probation. The statute itself also provides for conversion as an element of the offense. Judge, I understand it's kind of- What error did the district court commit in your view? Well, the district court adopted the position of the quote unquote victim, which was Tomtop Corporation. And that's in saying that he stole these funds. The district court didn't really understand that this wasn't a theft. There was never a theft. The money was always in Dan Shih's exclusive control. It was in corporations that had no ownership interest. He formed the corporations. However, he did not earn the funds himself. So in your brief on page 16, you say, at all times, Z had legal and rightful ownership of the funds at issue.  Okay. If that's true, how could he have converted from himself? Well, since he didn't own the corporations, nobody owned the corporations. There was never any stock issue. There was never any ownership in this- Is it your position that he held legal ownership of the funds in the company, transferred him by whoever, Walmart or Sam's Club or somebody?  Okay. Correct. He had legal ownership of the money? That's what you wrote in your brief. Judge, I think it's a- Because if that's true, I don't know how you can convert. I don't know how one can steal from oneself or convert from oneself. It was maybe the brief is incorrect in saying legal ownership. It was in the name of a corporation that had no ownership. So- The funds belong to somebody. When Walmart relinquished them, they belonged to somebody. They were sent to a corporation that Tom Top was attempting to apparently distance themselves as far as possible from. They never had gave Mr. Shee any in addition that they owned the corporation and they sat dormant in the account. It was- It's our position that when Judge Tharpe stated this is a naked attempt to steal $2.5 million that was motivated by greed was an incorrect statement. He did not- Dan Shee did not steal the funds. Judge, if there's any- I'd like to answer any questions, but I'd like to save a couple minutes for rebuttal. Very good. You may reserve your time for rebuttal. Thank you. Thank you, Mr. Tunick. Mr. Snell, we'll move to you. Good morning, Your Honors. Opposing counsel. May it please the Court. My name is Jeff Snell and I represent the affidavit of the United States of America in this appeal. The defendant had the right to be sentenced based on accurate information. The defendant was sentenced based on accurate information. The record and specifically the transcript from the sentencing hearing as well as the change of plea hearing demonstrates that the district court understood the factual basis for the offense to which the defendant pled guilty, which was the interstate transfer of stolen money in violation of 18 U.S.C. 2314. The district court's characterization at sentencing of the conduct as stealing or as theft was not error. It was completely consistent with a general understanding of the terms, and it was also not the first time that those terms were used in this case. The offense is specifically characterized in the plea agreement as the interstate transfer of stolen money. The government's sentencing memorandum specifically used the words theft and steal in it and characterized them the same, and it was not, those terms were not first introduced by the victim's attorney at the sentencing hearing. The victim's attorney's statements at the sentencing hearing also had been, were consistent with their written submission, which was submitted on or around December 6th, 2023, so about 14 days prior to the sentencing hearing. Mr. Snell, if the case would have proceeded to trial, was the government prepared to prove that Mr. Z did not have legal and rightful ownership of the funds? Yes, Your Honor. The plea agreement specifically states that the funds were held in accounts in the seven corporations' names, so the funds belonged to the corporations. Because the corporations were the ones that engaged in the commerce that was resulting in the transfer of the money from Walmart into the accounts. Yes, Your Honor, that's my understanding. And here, whether it's the characterization of whether the funds were stolen, whether they were converted, whether they were embezzled, it's a distinction without a difference insofar as they are of the requisite character to be within the statute, and the statute criminalizes the interstate transfer of those funds, and the defendant does not dispute that. The district court explored the factual basis at both the sentencing hearing as well as the change of plea hearing, and fully understood, as demonstrated by those transcripts, what occurred. And the district court also credited what defendant raises in his appeal, which is that he had an intention to return the funds, and the district court explored that, asked questions about it, and concluded, with a factual conclusion, that he thought that the district judge thought that the defendant would return the funds if he made a lot of money. And he did not make a lot of money with the funds. He lost the majority of them in the stock market. And so the district court addressed the specific factual argument that's being made about the distinction between conversion and theft. Insofar as that argument, it would be the government's submission that the argument was actually waived, because the district court, in setting the sentencing hearing for December 20th, entered an order on September 11th, noting that any objections to the PSR or the opposing party's sentencing memorandum that were not noted could be waived. And as I mentioned earlier in my argument, the government's sentencing memorandum specifically used the terms theft and said that the funds were stolen. It used theft and convert, right? Oh, yes. Yeah. Yes. Yes. Yes. And then, albeit it was not the original PSR, it was a supplemental PSR on December 6th, which contained or conveyed the victim's written impact statement, also 14 days before the  And then at the hearing, in fact, the judge's opening question, so to speak, was asking for clarification on the amount of funds stolen and using that term. And at no point was it ever brought to the district court's attention that the funds were not stolen or any issue taken with that terminology. And so for that reason, the government would submit that the argument's actually been waived. But to the extent that it was forfeited under a plain-air review, the government would also contend that... Even if they were converted, I mean, even if we want to get into the semantics of that, it's an unlawful conversion, right? It violated Title 18. It's not a legal conversion. That's correct. Yes, Your Honor. And it was the transfer, then, of the converted funds that were the offense. And the district court specifically took into account the nature and circumstances of the offense in pronouncing the sentence. And the government would request that the court affirm the sentence. If there's any further questions I might answer, I'd be happy to. Thank you, Mr. Snell. Thank you. Mr. Tunick, we'll go back to you now for rebuttal argument. Thank you, Your Honors. The plea agreement specifically, the factual basis specifically talks about conversion. The plea agreement mentions that the defendant converted the funds, and every time it's mentioned in the plea agreement about the funds, it's talked about conversion. And I understand Your Honor's point that the conversion is illegal. The conversion of the funds are illegal. But there's a big difference between a conversion and a theft. For example, as I stated briefly in the brief, if a bank mistakenly puts money into your bank account, and it lays dormant for a year, and you begin trading it, it's a lot different than stealing money from a bank or writing false checks. Because you did not scheme to defraud the bank. They accidentally put the money in your bank account. And that's the distinction that I'm trying to emphasize to Your Honors, that there was a pervasive overriding justification that, in the sentence, that this was a theft. It was a constant reference to theft. The victim impact statement was that we have been victimized by Mr. Shee, when Tom Top actually placed the money purposely into Mr. Shee's hands. And for Tom Top to come into the courtroom and say they've victimized, Mr. Shee victimized us and stole from us. Did the district court commit legal error by accepting the victim impact testimony at  I think the court did, because the court failed to... What authority do you have for that? I think what I cited was the case of Corona Gonzalez. So your position is that we should hold that U.S. district courts are no longer allowed to receive victim impact testimony if the victim mischaracterizes the offense conduct in the defendant's view? Well, I would just take issue in the defendant's view if it's factually incorrect. I mean, here it was a conversion. It wasn't a theft. And to take the victim's statement that we were stole from without any evidence from the victim that they were actually stole from, it was contrary to all the evidence in the case. Was the conversion legal or illegal? The conversion was illegal. Illegal? Illegal. But the judge seemed to misunderstand the actual nature of the offense, that this was not a theft. And based on the Corona Gonzalez case, where the judge relied on the fact that he believed that Corona Gonzalez had previously been illegally deported, this court reversed on that issue as an incorrect factual adoption and material. And this, I believe, was a material factually incorrect adoption that Mr. She stole money. He did not steal money. The victim placed the money in his hands for whatever reason is not particularly clear. I think it was for not a particularly legal reason. But they put the money in his hands. He did not steal those funds. And for those reasons, I'd ask the court to reverse. Thank you very much. Thank you, Mr. Tunick. Thank you, Mr. Snell. The case will be taken under revisement.